**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

DION THOMAS,

      Movant,

vs.

UNITED STATES OF AMERICA,

      Respondent.

No. 16-CV-2006-LRR
No. 11-CR-2046-LRR

**ORDER**

*TABLE OF CONTENTS*

*I.*  *INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**

*II.*  *RELEVANT BACKGROUND AND PROCEDURAL HISTORY* . . . . . . . . . . **2**

   *A.*  *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **2**
   *B.*  *Relevant Facts Established at Trial* . . . . . . . . . . . . . . . . . . . . . . **6**

*III.*  *LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **6**

   *A.*  *Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255* . . . . . . **6**
   *B.*  *Standards Applicable to Constitutional Right to Counsel* . . . . . . . . . **10**

*IV.*  *ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **12**

   *A.*  *Request for Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . **12**
   *B.*  *Movant's Arguments* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **13**

      *1.*  *Ineffective Assistance of Trial Counsel Claims* . . . . . . . . . . . . **13**
         *a.*  *Failure to object to government's use of a cooperating*
            *witness' plea agreement* . . . . . . . . . . . . . . . . . . . . . . . . . **14**
         *b.*  *Failure to object to Jury Instruction 23* . . . . . . . . . . . . . **17**
         *c.*  *Failure to conduct an adequate background investigation*
            *and obtain movant's Illinois incarceration records* . . . . . . . . **20**
         *d.*  *Failure to recall government agents* . . . . . . . . . . . . . . . . **22**
         *e.*  *Failure to effectively cross-examine Christopher Glover* . **23**
         *f.*  *Failure to object to "material matters"* . . . . . . . . . . . . . **24**

　　　　2. *Ineffective Assistance of Appellate Counsel Claims* . . . . . . . . . **24**
　　　　3. *Defaulted Claims* . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

**V. CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **30**

## I. INTRODUCTION

This matter comes before the court on Dion Thomas' motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255 ("motion"), which he filed on January 13, 2016 (civil docket no. 1). On February 1, 2017, the court directed the government to brief the claims that movant asserted in the motion (civil docket no. 4). The court also directed counsel to file with the court an affidavit responding only to movant's specific allegations of ineffective assistance of counsel (*id.*). Trial counsel timely complied with the court's order by filing his affidavit on March 8, 2017 (civil docket no. 7). Appellate counsel filed his affidavit on March 19, 2017 (civil docket no. 8). The government filed its responsive brief on April 4, 2017 (civil docket no. 9). Movant filed his reply on May 15, 2017 (civil docket no. 13). On May 19, 2017, movant filed a motion to amend the claim concerning ineffective assistance of appellate counsel ("amended motion") (civil docket no. 15).[1]

## II. RELEVANT BACKGROUND AND PROCEDURAL HISTORY

### A. Procedural History

On December 8, 2011, a grand jury charged movant and five others in a seven count indictment (criminal docket no. 7). Movant was charged in two counts. Movant's charges by count were: count 1, conspiracy to distribute and possess with intent to distribute 100 grams or more of a mixture or substance containing a detectable amount of heroin after having been previously convicted of a felony drug crime, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), 846 and 851; and count 3, distribution of .54 grams

---

[1] Movant merely expounds upon factual assertions made in support of his claims concerning appellate counsel. Accordingly, movant's amended motion shall be granted.

of a mixture or substance containing a detectable amount of heroin after having been previously convicted of a felony drug crime, a violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 851.[2]   A forfeiture claim was also made for property or proceeds including proceeds of $250,000 (criminal docket no. 7).   On May 18, 2012, the government filed an Information (criminal docket no. 91) pursuant to 21 U.S.C. § 851, notifying the court and movant of the government's intent to seek enhanced penalties against movant based on his August 25, 2009 conviction for possession with intent to deliver a controlled substance in the Circuit Court of Cook County, Illinois.[3]   At arraignment, movant was represented by appointed counsel ("trial counsel") and entered pleas of not guilty (criminal docket no. 76).

On June 27, 2012, movant filed a pro se motion for a new attorney (criminal docket no. 109).   Movant argued that trial counsel had "not filed anything on [his] behalf" (*id.* at 1).   Movant argued that he was "constantly asking [trial counsel] to file motions on [his] behalf," but trial counsel failed to do so, and that trial counsel did "not have [his] best interest" (*id.*).   At a hearing, movant reiterated his concerns and noted that trial counsel was not defending him but had merely advised him to accept a guilty plea (criminal docket no. 332 at 2-4).   Movant also complained that trial counsel did not show him any statements from witnesses that implicated him (*id.* at 3).   When asked what motion he wished trial counsel to file, movant responded:

> I mean, I'm not a lawyer, but I'm pretty sure he can find
> me—if I'm charged with something, I'm pretty sure there is a
> motion that can be filed as far as this case is.   I feel like I'm

---

[2] In August of 2009, movant was convicted of possession of between 15-100 grams of cocaine.   *See United States v. Thomas*, 760 F.3d 879, 890 (8th Cir. 2014).

[3] On March 11, 2013, the government filed an Amended Information (criminal docket no. 290), which "correct[ed] the name of [movant's] crime of conviction from 'possession with intent to deliver a controlled substance' to 'possession of a controlled substance.'"

> just sitting here and I'm at the same stage I was at, and all he
> wants me to do is just take a plea agreement.

(*id.* at 4).  Trial counsel then informed the court that he and movant

> have discussed the evidence many times.  I've even reserved
> a room at the jail where he could—part of the evidence in the
> case—this was a case where there was wiretaps.  And so I
> reserved a room where he could actually listen to the recorded
> conversations, which he's done.  And then I've discussed the
> other evidence in the case again.
>
> So I haven't provided him copies of anything because,
> according to the discovery, standard discovery order, I can't.
> But I did, and I think he's got it with him here today, I sent
> him a several page letter summarizing what the evidence was
> and what my recommendation would be as far as whether to
> accept a plea agreement or go to trial, and the pitfalls he might
> run into if he did go to trial.  So he knows as much about the
> case as I do.

(*id.* at 7-8).  The court denied movant's motion for new counsel (criminal docket no. 113).

On August 6, 2012, trial counsel filed a motion in limine to exclude, among other things, any "written plea agreements of government witnesses" as hearsay and as inadmissible under Federal Rule of Evidence 403 (criminal docket no. 146 at 2-3).  Trial counsel argued that "what the witness and the government have agreed can be brought out in testimony without the baggage of potentially prejudicial factual stipulations or other agreements to which [movant] is not a party" (*id.* at 3).  The court granted the motion in limine to exclude this evidence, noting that the government did "not intend to offer cooperating witnesses' written plea agreements into evidence" (criminal docket no. 165 at 4).

The government also filed a motion in limine asking the court to enter a pretrial order admitting into evidence testimony regarding movant's crack cocaine distribution (criminal docket no. 147).  On August 9, 2012, trial counsel filed a supplemental motion in limine to exclude the same (criminal docket no. 149).  The court granted the

government's motion and denied movant's supplemenal motion, finding that evidence of movant's crack cocaine distribution was admissible pursuant to Rule 404(b) to show movant's motive, opportunity, intent, preparation, plan, knowledge, absence of mistake or lack of accident (criminal docket no. 165).

Movant proceeded to trial on August 27, 2012 (criminal docket no. 168). At the close of all of the evidence, trial counsel moved for a judgment of acquittal on counts 1 and 3, which the court denied (criminal docket no. 173). On August 29, 2012, the jury returned verdicts of guilty on both counts (criminal docket no. 180). On September 12, 2012, trial counsel filed a motion for a new trial (criminal docket no. 186), which the court denied on November 8, 2012 (criminal docket no. 216). On December 21, 2012, movant again filed a pro se motion for new counsel based on the same grounds as in his earlier motion (criminal docket no. 245). The court again denied the motion (criminal docket no. 255). A presentence report was finalized on January 4, 2013 (criminal docket no. 258). With the help of his mother, movant retained private counsel on January 25, 2013 (criminal docket nos. 271 & 272).[4] A sentencing hearing was held on March 25, 2013 and July 16, 2013 (criminal docket nos. 305, 319 & 320).

The court granted movant's motion for a downward departure (criminal docket no. 305) and sentenced him to 240 months' imprisonment on each count, with the sentences to be served concurrently (criminal docket nos. 306 & 320). In addition, the court imposed a total of eight years of supervised release and a total of $200 in special assessments (*id.*).

Movant appealed his convictions and sentences. On direct appeal, he unsuccessfully argued that: (1) the court violated Federal Rule of Evidence 404(b) by allowing testimony regarding movant's alleged crack distribution and alleged money laundering; (2) the court erred by denying movant's motions for new counsel; (3) the court erred by considering

---

[4] Retained counsel also represented movant on direct appeal.

movant's uncharged, crack-distribution conduct in calculating his advisory sentencing guidelines offense level; and (4) the court erred by including movant's state court conviction for cocaine possession in calculating his criminal history score. *See Thomas*, 760 F.3d at 882. The United States Supreme Court denied certiorari on January 12, 2015. *Thomas v. United States*, 135 S. Ct. 1013 (2015).

In the motion, the court understands movant to assert a plethora of ineffective assistance of trial and appellate counsel claims (civil docket nos. 1 & 1-1). Movant also argues that: (1) prosecutorial misconduct occurred during trial, that is, the government used a cooperating witness' plea agreement in violation of the court's in limine order, and (2) the court misapplied the law (*id.*).

### B.  Relevant Facts Established at Trial

The court agrees with the recitation of relevant facts established at trial as stated in the government's brief (civil docket no. 9) and the summary of the trial evidence as stated in the Eighth Circuit Court of Appeals' appellate opinion, *see Thomas*, 760 F.3d at 882-83.

### III.  LEGAL STANDARDS

### A.  Standards Applicable to Motion Pursuant to 28 U.S.C. § 2255

A prisoner in custody under sentence of a federal court is able to move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief pursuant to 28 U.S.C. § 2255, a federal prisoner must establish: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction to impose such sentence"; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) "[that the judgment or sentence] is otherwise subject to collateral attack." *Id.*; *see also Hill v. United States*, 368 U.S. 424, 426-27 (1962) (listing four grounds upon which relief under 28 U.S.C. § 2255 may be claimed); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007) (same); *Lee v. United States*, 501 F.2d 494, 499-500 (8th Cir. 1974) (clarifying that subject matter

jurisdiction exists over enumerated grounds within the statute); Rule 1 of the Rules Governing Section 2255 Proceedings (specifying scope of 28 U.S.C. § 2255). If any one of the four grounds is established, the court is required "to vacate and set aside the judgment and [it is required to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting 28 U.S.C. § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quoting *Davis v. United States*, 417 U.S. 333, 343 (1974)) (internal quotation mark omitted). Although it appears to be broad, 28 U.S.C. § 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id*. (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Rather, 28 U.S.C. § 2255 is intended to redress constitutional and jurisdictional errors and, apart from those errors, only "fundamental defect[s] which inherently [result] in a complete miscarriage of justice" and "omission[s] inconsistent with the rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also Sun Bear*, 644 F.3d at 704 (clarifying that the scope of 28 U.S.C. § 2255 is severely limited and quoting *Hill*, 368 U.S. at 428); *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." (citing *Poor Thunder v. United States*, 810 F.2d 817, 821 (8th Cir. 1987))). A collateral challenge under 28 U.S.C. § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982) (making clear that a motion pursuant to 28 U.S.C. § 2255 will not be allowed to do service for an appeal). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id*. (quoting *Addonizio*, 442 U.S. at 184).

The law of the case doctrine has two branches. *See Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002). The first branch involves the "mandate rule (which, with only a few exceptions, forbids, among other things, a lower court from relitigating issues that were decided by a higher court, whether explicitly or by reasonable implication, at an earlier stage of the same case)." *Id*. The second branch, which is somewhat more flexible, provides that "a court ordinarily ought to respect and follow its own rulings" throughout subsequent stages of the same litigation. *Id*.; *see also United States v. Bloate*, 655 F.3d 750, 755 (8th Cir. 2011) ("The [law of the case] doctrine applies only to actual decisions—not dicta—in prior stages of the case."); *Roth v. Sawyer-Cleator Lumber Co.*, 61 F.3d 599, 602 (8th Cir. 1995) ("Law of the case applies only to issues actually decided, either implicitly or explicitly, in the prior stages of a case."). "[R]ulings are the law of the case and will not be disturbed absent an intervening change in controlling authority." *Baranski v. United States*, 515 F.3d 857, 861 (8th Cir. 2008); *see also Davis*, 417 U.S. at 342 (observing that law of the case did not preclude relief under 28 U.S.C. § 2255 because of intervening change in the law).

Hence, in collateral proceedings based on 28 U.S.C. § 2255, "[i]ssues raised and decided on direct appeal cannot ordinarily be relitigated." *United States v. Wiley*, 245 F.3d 750, 751 (8th Cir. 2001) (citing *United States v. McGee*, 201 F.3d 1022, 1023 (8th Cir. 2000)); *see also Lefkowitz v. United States*, 446 F.3d 788, 790-91 (8th Cir. 2006) (concluding that the same issues that have been raised in a new trial motion and decided by the district court cannot be reconsidered in a subsequent collateral attack); *Bear Stops v. United States*, 339 F.3d 777, 780 (8th Cir. 2003) ("It is well settled that claims which were raised and decided on direct appeal cannot be relitigated on a motion to vacate pursuant to 28 U.S.C. § 2255." (quoting *United States v. Shabazz*, 657 F.2d 189, 190 (8th Cir. 1981))); *Dall v. United States*, 957 F.2d 571, 572-73 (8th Cir. 1992) (per curiam) (concluding that claims already addressed on direct appeal could not be raised); *United*

*States v. Kraemer*, 810 F.2d 173, 177 (8th Cir. 1987) (concluding that a movant could not "raise the same issues . . . that have been decided on direct appeal or in a new trial motion"); *Butler v. United States*, 340 F.2d 63, 64 (8th Cir. 1965) (concluding that a movant was not entitled to another review of his question). With respect to a claim that has already been conclusively resolved on direct appeal, the court may only consider the same claim in a collateral action if "convincing new evidence of actual innocence" exists. *Wiley*, 245 F.3d at 752 (citing cases and emphasizing the narrowness of the exception).

Further, movants ordinarily are precluded from asserting claims that they failed to raise on direct appeal. *See McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001); *see also Ramey v. United States*, 8 F.3d 1313, 1314 (8th Cir. 1993) (per curiam) (citing *Frady*, 456 U.S. at 167-68, for the proposition that a movant is not able to rely on 28 U.S.C. § 2255 to correct errors that could have been raised at trial or on direct appeal); *United States v. Samuelson*, 722 F.2d 425, 427 (8th Cir. 1983) (concluding that a collateral proceeding is not a substitute for a direct appeal and refusing to consider matters that could have been raised on direct appeal). "A [movant] who has procedurally defaulted a claim by failing to raise it on direct review may raise that claim in a [28 U.S.C. §] 2255 proceeding only by demonstrating cause for the default and prejudice or actual innocence." *McNeal*, 249 F.3d at 749 (citing *Bousley v. United States*, 523 U.S. 614, 622 (1998)); *see also Massaro v. United States*, 538 U.S. 500, 504 (2003) ("[T]he general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the [movant] shows cause and prejudice."). "'[C]ause' under the cause and prejudice test must be something *external* to the [movant], something that cannot fairly be attributed to him." *Coleman v. Thompson*, 501 U.S. 722, 753 (1991). If a movant fails to show cause, a court need not consider whether actual prejudice exists. *See McCleskey v. Zant*, 499 U.S. 467, 501 (1991). Actual innocence under the actual innocence test "means factual innocence, not mere legal insufficiency." *Bousley*, 523 U.S. at 623; *see also McNeal*, 249

F.3d at 749 ("[A movant] must show factual innocence, not simply legal insufficiency of evidence to support a conviction."). To establish actual innocence, a movant "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (citation omitted) (internal quotation marks omitted).[5]

## B. Standards Applicable to Constitutional Right to Counsel

The Sixth Amendment to the United States Constitution provides in pertinent part that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his [or her] defen[s]e." U.S. Const., amend. VI. Furthermore, there is a constitutional right to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 393-95 (1985); *Douglas v. California*, 372 U.S. 353, 356-57 (1963).

The Sixth Amendment right to effective counsel is clearly established. *See Strickland v. Washington*, 466 U.S. 668 (1984). In *Strickland*, the Supreme Court explained that a violation of that right has two components:

> First, [a movant] must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the [movant] by the Sixth Amendment. Second, [a movant] must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the [movant] of a fair trial, a trial whose result is reliable.

*Id.* at 687; *see also Williams v. Taylor*, 529 U.S. 362, 390 (2000) (reasserting *Strickland* standard). Thus, *Strickland* requires a showing of both deficient performance and prejudice. However, "a court deciding an ineffective assistance claim [need not] address

---

[5] The procedural default rule applies to a conviction obtained through trial or through the entry of a guilty plea. *See, e.g.*, *Matthews v. United States*, 114 F.3d 112, 113 (8th Cir. 1997); *Thomas v. United States*, 112 F.3d 365, 366 (8th Cir. 1997); *Reid v. United States*, 976 F.2d 446, 448 (8th Cir. 1992).

both components of the inquiry if the [movant] makes an insufficient showing on one." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on grounds of lack of sufficient prejudice, . . . that course should be followed." *Id.*; *see also Apfel*, 97 F.3d at 1076 ("[A court] need not address the reasonableness of the attorney's behavior if the movant cannot prove prejudice.").

To establish unreasonably deficient performance, a movant "must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. The "reasonableness of counsel's challenged conduct [must be reviewed] on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690. There is a strong presumption of competence and reasonable professional judgment. *Id.*; *see also United States v. Taylor*, 258 F.3d 815, 818 (8th Cir. 2001) (operating on the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" (quoting *Strickland*, 466 U.S. at 689)); *Sanders v. Trickey*, 875 F.2d 205, 210 (8th Cir. 1989) (broad latitude to make strategic and tactical choices regarding the appropriate action to take or refrain from taking is afforded when acting in a representative capacity) (citing *Strickland*, 466 U.S. at 694). In sum, the court must "determine whether, in light of all the circumstances, the identified acts or omissions were outside the range of professionally competent assistance." *Strickland*, 466 U.S. at 690.

To establish prejudice, "[i]t is not enough for [a movant] to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. Rather, a movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. In other words, "the question is whether there is a reasonable probability that, absent those errors, the fact finder would have had a reasonable doubt respecting guilt." *Id.* at 695. In

answering that question, the court "must consider the totality of the evidence before the judge or jury." *Id*.

## IV. ANALYSIS

### A. Request for Evidentiary Hearing

A district court is given discretion in determining whether to hold an evidentiary hearing on a motion under 28 U.S.C. § 2255. *See United States v. Oldham*, 787 F.2d 454, 457 (8th Cir. 1986). In exercising that discretion, the district court must determine whether the alleged facts, if true, entitle the movant to relief. *See Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996). Accordingly, a district court may summarily dismiss a motion brought under 28 U.S.C. § 2255 without an evidentiary hearing "if (1) the . . . allegations, accepted as true, would not entitle the [movant] to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir. 1995) (citations omitted); *see also Delgado v. United States*, 162 F.3d 981, 983 (8th Cir. 1998) (stating that an evidentiary hearing is unnecessary where allegations, even if true, do not warrant relief or allegations cannot be accepted as true because they are contradicted by the record or lack factual evidence and rely on conclusive statements); *United States v. Hester*, 489 F.2d 48, 50 (8th Cir. 1973) (stating that no evidentiary hearing is necessary where the files and records of the case demonstrate that relief is unavailable or where the motion is based on a question of law). Stated differently, the court can dismiss a 28 U.S.C. § 2255 motion without a hearing where "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *accord Standing Bear v. United States*, 68 F.3d 271, 272 (8th Cir. 1995) (per curiam).

The court concludes that it is able to resolve movant's claims from the record. *See Rogers v. United States*, 1 F.3d 697, 699 (8th Cir. 1993) (holding that "[a]ll of the

information that the court needed to make its decision with regard to [the movant's] claims was included in the record" and, therefore, the court "was not required to hold an evidentiary hearing" (citing Rule Governing Section 2255 Proceedings 8(a) and *United States v. Raddatz*, 447 U.S. 667, 674 (1980))). The evidence of record conclusively demonstrates that movant is not entitled to the relief sought. Specifically, it indicates that movant's assertions are meritless and/or frivolous. As such, the court finds that there is no need for an evidentiary hearing.

## B. Movant's Arguments

With respect to the merits of movant's claims, the court deems it appropriate to deny movant's 28 U.S.C. § 2255 motion for the reasons that are stated in the government's resistance because it adequately applied the law to the facts in the case. The government correctly asserted that: (1) trial counsel and appellate counsel provided professionally competent assistance to movant and did not make objectively unreasonable choices regarding the appropriate action to take or refrain from taking that prejudiced movant's defense and (2) some of movant's claims are procedurally defaulted. Regarding the former point, trial counsel and appellate counsel thoroughly explained their strategy in their affidavits (civil docket nos. 7 & 8), and such explanation is consistent with what occurred during pre-trial, trial, sentencing and appellate proceedings.

### 1. Ineffective Assistance of Trial Counsel Claims

Movant claims that trial counsel was ineffective because he: (1) failed to object or move for a mistrial after the government used the plea agreement of a cooperating witness to correct her testimony regarding movant's drug distribution quantities; (2) failed to object to Jury Instruction 23, which led to constructive amendment of the indictment; (3) failed to conduct an adequate investigation of movant's background and obtain movant's Illinois incarceration records; (4) failed to recall government agents; (5) failed to conduct adequate

cross-examination of a government witness; and (6) failed to object to "material matters." The court addresses, and rejects, each contention in turn.

### a. Failure to object to government's use of a cooperating witness' plea agreement

As previously mentioned, the court granted trial counsel's motion in limine to exclude from evidence cooperating witnesses' written plea agreements. During direct examination of cooperating witness Katina McKenzie-Jackson (movant's aunt), the government questioned her about the quantities of heroin and cocaine movant had delivered to Waterloo (criminal docket no. 200 at 62-66). McKenzie-Jackson initially testified that she did not know how much heroin movant would bring with him when he visited Waterloo (criminal docket no. 200 at 64). The government then refreshed her recollection with her written plea agreement, and the following colloquy ensued:

> Q. How much heroin would you get from [movant]?
> A. Maybe a half gram, sometimes a gram.
> Q. What would you do with that heroin?
> A. Use it, and sometimes I sold some of it.
> Q. And how often would you get [heroin] from [movant]?
> A. Mostly every time he came.
> Q. Do you know how much heroin he would bring when he came to town?
> A. No, ma'am.
> Q. Ms. McKenzie-Jackson, did you enter into a plea agreement with the United States?
> A. Yes, I did.
> Q. As part of that plea agreement, did you initial factual representations within the agreement?
> A. Yes, ma'am.
> Q. And isn't it true, Ms. McKenzie-Jackson, that in [one] of those factual statements, you initialed a statement that said [movant] made at least 10 trips from Chicago, bringing at least 10 grams of heroin and 2 ounces of crack cocaine on each trip?
> A. Yes, ma'am.
> Q. Are you telling us now that's not true?

14

A. No, ma'am.
Q. So do you know how much he brought with him?
A. Not exactly, but I guess—I guess maybe 10 grams. Sometimes he brought 5. I didn't know, you know, each time what he brought.
Q. Would it vary from time to time?
A. Yes, it did.

(criminal docket no. 200 at 64-65). Trial counsel did not object to this line of questioning.

Contrary to movant's contention, trial counsel's failure to object or move for a mistrial following the government's use of McKenzie-Jackson's plea agreement does not constitute ineffective assistance of counsel. As an initial matter, the written plea agreement was not introduced into evidence at trial in violation of the court's in limine order. Moreover, trial counsel thoroughly explained in his affidavit why he did not object to the government's use of the plea agreement during McKenzie-Jackson's testimony:

> Indeed, it is not the fact that the cooperator had entered into a plea agreement [that] is problematical. It is the language in a plea about the cooperation provisions and the requirement of testifying truthfully and the prospect of a time cut if the government believes the testimony is truthful that is problematic to a defendant. Also, the factual stipulations in plea agreements often include hearsay statements that could be prejudicial to the defendant. None of the cooperation provisions or hearsay statement of facts in [McKenzie-Jackson's] plea agreement were the subject of her testimony, if counsel's memory is correct. In addition, [McKenzie-Jackson], in response to questions from the prosecutor, adopted at the trial those facts she stipulated to in the plea agreement, so there was no hearsay problem.

(civil docket no. 7 at 3).

Strategic decisions like this one are virtually unchallengeable, *see Link v. Luebbers*, 469 F.3d 1197, 1204 (8th Cir. 2006), and the court sees no substantial argument that trial counsel's decision was outside the wide range of reasonable professional assistance. *See Dansby v. Hobbs*, 766 F.3d 809, 836 (8th Cir. 2014). Furthermore, even if counsel's

conduct constituted deficient performance, movant fails to establish that McKenzie-Jackson's testimony was prejudicial. Indeed, even without her testimony, there is ample evidence supporting the jury's verdict that movant distributed more than 100 grams of heroin during the course of the conspiracy. For example, Arthur Scott testified that he received about forty-five grams of heroin per week from movant (180 grams per month) for at least a two-month time period (criminal docket no. 199 at 21, 40). At another point in his testimony, Scott estimated that he received even more heroin from movant—between 240 to 250 grams per month (*id.* at 37). Coconspirator Essex McKenzie (movant's uncle) testified that he received three to four grams of heroin from movant twice a week for approximately two years (criminal docket no. 200 at 36-37). Although the court ultimately made more conservative estimates as to the amount of heroin distributed to each of these individuals in its sentencing findings,[6] movant does not show a reasonable probability that the jury would have reached a different conclusion in the absence of McKenzie-Jackson's testimony regarding the amount of heroin movant distributed in Waterloo. Hence, this ineffective assistance of trial counsel claim fails.

In his reply brief, movant contends that trial counsel should have filed a motion for bill of particulars because "it would have protected [movant] from being ambushed by the unusual methods the Government used to violate [movant's] Due Process Rights" (civil docket no. 13 at 3-4). A motion for bill of particulars would have had no merit. A motion for a bill of particulars is appropriate when a movant believes that the indictment does not provide enough information to prepare a defense. *See United States v. Huggans*, 650 F.3d 1210, 1220 (8th Cir. 2011). The purpose of a bill of particulars is to inform a defendant of the nature of a charge with sufficient precision to enable him to prepare for trial and to avoid or minimize the danger of surprise at trial. *Id.* But it is not a discovery device to

---

[6] The court found that movant had distributed 127 total grams of heroin to Arthur Scott and 312 total grams of heroin to Essex McKenzie (criminal docket no. 304 at 17).

be used to require the government to provide a detailed disclosure of the evidence it would present at trial. *Id.* Yet that is what movant appears to be contending that trial counsel should have attempted. Contrary to what movant suggests, a motion for bill of particulars could not have been used to establish the details of the conspiracy. In any event, the government's pretrial disclosures and pretrial motions and responses were more than sufficient to enable movant to understand the nature of the charges, prepare a defense and avoid unfair surprise. *See id.* Trial counsel was not deficient in failing to file a meritless motion, nor was movant prejudiced by it.

### b. *Failure to object to Jury Instruction 23*

Movant next contends that trial counsel was ineffective for failing to renew his objection at trial to the crack cocaine distribution evidence by failing to object to Jury Instruction 23, which provides as follows:

> You have heard evidence that the defendant participated in distributing crack cocaine. You may consider this evidence only if you unanimously find it is more likely true than not true. This is a lower standard than proof beyond a reasonable doubt. It is instead proof by the greater weight of the evidence. If you find that this evidence of other acts is proved by the greater weight of the evidence, you may consider it to help you decide issues related to the defendant's intent, knowledge and/or motive. You should give it the weight and value you believe it is entitled to receive. You must disregard it unless you find it is proved by the greater weight of the evidence.
>
> Remember, even if you find that the defendant may have committed similar uncharged acts, this is not evidence that he committed the acts charged in the Indictment. You may not convict a person simply because you believe he may have committed similar uncharged acts. The defendant is on trial only for the crimes charged, and you may consider the evidence of similar acts only on the issues of intent, knowledge and/or motive

(criminal docket no. 178 at 26).

As previously mentioned, the court permitted the crack cocaine distribution evidence to be introduced at trial for non-propensity purposes under Federal Rule of Evidence 404(b) (criminal docket no. 165 at 8, 10). The Eighth Circuit Court of Appeals affirmed this ruling on direct appeal. *See Thomas*, 760 F.3d at 884-84. Jury Instruction 23 adequately and correctly set forth the limited purposes for which the evidence could be considered and largely mirrors the Eighth Circuit Model Instruction 2.08 (Defendant's Prior Similar Acts). *Cf. United States v. Cruz–Zuniga*, 571 F.3d 721, 725-26 (8th Cir. 2009) (finding no abuse of district court's wide discretion in formulating appropriate jury instructions where court gave Eighth Circuit Model Instruction on reasonable doubt; defendant is not entitled to particularly-worded instruction when instructions actually given by trial court adequately and correctly cover substance of requested instruction).

Movant contends, however, that the preponderance standard set forth in Jury Instruction 23 "reduces the government's burden of proof as to the essential elements" of his charge and permits the jury to "mix and match the level of proof needed to sustain his conviction" (civil docket no. 1-1 at 40). Nothing in Jury Instruction 23 removes the government's burden of proving beyond a reasonable doubt every element of the charged offenses. Jury Instruction 23 properly defines the burden of proof for other acts as "greater weight" or preponderance of the evidence. *See United States v. Vieth*, 397 F.3d 615, 617-18 (8th Cir. 2005) (to be admissible under Rule 404(b), the evidence must be proved by a preponderance of the evidence).

Movant further argues that Jury Instruction 23 constitutes a constructive amendment to the indictment. "A constructive amendment occurs when the essential elements of the offense as charged in the indictment are altered in such a manner—often through the evidence presented at trial or the jury instructions—that the jury is allowed to convict the defendant of an offense different from or in addition to the offenses charged in the

indictment." *United States v. Hill*, 835 F.3d 796, 799 (8th Cir. 2016) (quoting *United States v. Johnson*, 719 F.3d 660, 668 (8th Cir. 2013)). In evaluating a constructive amendment claim, the court "consider[s] whether the admission of evidence or the jury instructions created a 'substantial likelihood' that the [movant] was convicted of an uncharged offense." *Id.* Jury Instruction 23 did not alter the charges in the indictment. Indeed, it was not an elemental instruction; rather, it was a Rule 404(b) limiting instruction informing the jury that, *if* it found that evidence of movant's crack cocaine distribution was proved by the greater weight of the evidence, it could then consider the evidence but "*only* on the issues of [movant's] intent, knowledge and/or motive" (criminal docket no. 178 at 26) (emphasis added). Jury Instruction 23 explicitly cautioned the jury that: (1) the crack cocaine distribution evidence "is not evidence that the defendant committed the acts charged in the Indictment"; (2) it could "not convict the defendant simply because [it] believed he may have committed similar uncharged acts"; and (3) the defendant "is on trial only for the crimes charged" (*id.*). Thus, Jury Instruction 23 did not materially alter the elements of the charged offenses such that it was substantially likely that the jury convicted movant of an uncharged offense.

To the extent movant's claim is based on the similar doctrine of variance of the evidence, the claim fails. "The basic difference between a constructive amendment and a variance is this: a constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." *United States v. Stuckey*, 220 F.3d 976, 981 (8th Cir. 2000). A variance in the evidence affects a defendant's right to adequate notice, that is, the Sixth Amendment right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI; *Stuckey*, 220 F.3d at 981. Thus, a variance between the indictment and proof at trial requires reversal of a conviction only if the variance actually prejudiced the defendant. *See United States v. Begnaud*, 783 F.2d 144, 148 (8th Cir. 1986). The primary consideration in this

determination is whether the indictment fully and fairly apprised the defendant of the charges he or she must meet at trial. *Id.* Clearly, the indictment here fully apprised movant of the proof that the government ultimately presented against him at trial. The indictment charged movant with conspiracy to distribute, and distribution of, heroin. This was the evidence the government produced at trial. Further, movant cannot now claim that he was unaware that the government would present evidence of his crack cocaine distribution in view of the fact that the court issued an in limine order allowing the government to present this evidence at trial. *See United States v. Whirlwind Soldier*, 499 F.3d 862, 871 (8th Cir. 2007); *see also United States v. Cain*, 487 F.3d 1108, 1113-14 (8th Cir. 2007) (rejecting challenge to conviction on variance argument where the defendant had notice of evidence to be adduced at trial).

Ineffective assistance claims cannot succeed where the argument counsel failed to make is without merit. *See Gray v. Bowersox*, 281 F.3d 749, 756 n.3 (8th Cir. 2002) ("[B]ecause the underlying objection would have been without merit, a claim of ineffective assistance is not viable."). Accordingly, movant's Jury Instruction 23 claim, either as a substantive claim or an ineffective assistance of counsel claim, is futile.

### c. Failure to conduct an adequate background investigation and obtain movant's Illinois incarceration records

Movant claims that trial counsel failed to conduct an adequate background investigation and obtain his Illinois incarceration records, which he asserts "could have been used to challenge the government witnesses['] testimony" (civil docket no. 1 at 4). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Forrest v. Steele*, 764 F.3d 848, 859 (8th Cir. 2014) (quoting *Rompilla v. Beard*, 545 U.S. 374, 383 (2005)). Counsel has a "duty to make reasonable investigations or to make a reasonable decision

that makes particular investigations unnecessary." *Hinton v. Alabama*, 134 S. Ct. 1081, 1088 (2014) (quoting *Strickland*, 466 U.S. at 690-91).

As an initial matter, trial counsel's general background investigation clearly met professional standards. The record reflects that trial counsel obtained discovery material from the government, discussed the evidence with movant and "even reserved a room at the jail" where movant could listen to the wiretapped conversations (criminal docket no. 332 at 7). Trial counsel explained in his affidavit that he visited the jail on "many occasions to meet with [movant] and discuss the evidence" and to review proposed plea agreements (civil docket no. 7 at 2). Movant concedes that trial counsel met with him in person on four occasions to review evidence and discuss the case (civil docket no. 1-5 at 1-3, 28). Movant also acknowledges trial counsel's investigation efforts, stating that, during their April 19, 2012 meeting, trial counsel brought "wiretap records, recordings and text messages" disclosed by the government and asked movant questions about "the meaning of what was in the material" (*id.* at 2). Trial counsel states in his affidavit that, as of the July 2, 2012 hearing on movant's motion for new counsel, he had spent 70.1 hours working on movant's case (civil docket no. 7 at 2). As the Eighth Circuit Court of Appeals acknowledged, movant's "contention that he had not met or discussed the case with [trial counsel] boiled down to a matter of credibility. The magistrate judge chose to believe [trial counsel's] testimony that he had discussed the evidence many times with [movant] and that [trial counsel] had reserved a room at the prison where [movant] could listen to the contents of the wiretaps." *See Thomas*, 760 F.3d at 887. The Eighth Circuit Court of Appeals concluded that movant "could demonstrate only 'frustration with counsel who d[id] not share [his] tactical opinions.'" *Id.* (citation omitted).

With regard to movant's claim that trial counsel failed to obtain movant's Illinois incarceration record, counsel's affidavit demonstrates that he made a reasonable decision that rendered further investigation unnecessary. Although movant's Illinois incarceration

records may show that movant was in prison for a few months during his trips to Waterloo, trial counsel explained in his affidavit that he did not "recall any witness testifying at trial that he or she bought or otherwise obtained heroin or cocaine from [movant] while [movant] was in custody" (civil docket no. 7 at 3). Thus, it is unclear how this evidence would have impeached any witnesses' testimony or otherwise assisted in movant's defense. Trial counsel further concluded that the fact movant "was in jail or prison was not something that would be helpful to present to the jury as an alibi" (*id.* at 4). Indeed, trial counsel explained that the evidence demonstrated that movant's incarceration "did not deter him from engaging in drug-related activities," noting that, after his release from custody in Illinois, movant (1) came to Iowa without his probation officer's permission and therefore was taken to jail where he "made a recorded phone call . . that discussed the location of drugs" and (2) sold heroin to an informant while being watched by an agent (*id.*). Hence, trial counsel's decision not to further investigate, or obtain records of, movant's Illinois incarceration does not constitute deficient performance. Furthermore, movant has not established prejudice based on trial counsel's decision. To the contrary, the court carefully considered (and ultimately excluded) movant's periods of incarceration when calculating the total drug quantity at sentencing (criminal docket no. 304 at 16-19).

With respect to movant's allegation that trial counsel failed to interview witnesses, movant does not identify which witnesses counsel failed to interview or how additional witness preparation would have affected the outcome of movant's trial. Hence, this claim fails.

### *d.* *Failure to recall government agents*

Movant asserts that trial counsel failed to comply with Department of Justice pretrial "Touhy" regulations and the pretrial discovery order by omitting government agents—Officer Bryan Furman and Special Agent Kelly Meggers—from the defense

witness list, and, thus, trial counsel was precluded from recalling these witnesses. Both government agents testified for the government and were cross-examined by trial counsel. Movant fails to establish that trial counsel's conduct prejudiced his defense. First, movant does not describe what Meggers' additional testimony would have been or how the testimony would have changed the outcome of the trial. With respect to Furman, movant proffers that Furman "could have confirmed whether or not Lucious Simmons[, a confidential informant], who[] made the June 23, 2011 controlled buy[,] had ever mentioned [movant's] name during several debriefing sessions with law enforcement as someone selling heroin in Waterloo" (civil docket 1-1 at 29). On cross examination of Furman, trial counsel questioned him extensively as to whether Simmons had ever mentioned that movant distributed heroin in Waterloo (criminal docket no. 199 at 83-88). Trial counsel referred to several debriefings and reports involving Simmons, but Furman repeatedly testified that he could not remember whether Simmons had ever mentioned movant's name (*id.*). Trial counsel offered to refresh Furman's recollection by furnishing him with reports from these debriefings, but Furman indicated that "[t]hen we would be in the same position" (*id.* at 88). Thus, it is unclear how recalling Furman to continue this questioning would have generated a definitive answer or how any definitive response would have assisted the defense. Even if Furman had testified that Simmons had not mentioned movant's name during debriefings, there was ample evidence to support the jury's determination that movant distributed heroin in Waterloo. Given such evidence, it is unlikely that the outcome of the jury's verdict would have been altered had Furman been recalled to give a definitive answer. Movant has not demonstrated that he was prejudiced by trial counsel's failure to recall Furman. Accordingly, movant's claim is without merit.

### e.  *Failure to effectively cross-examine Christopher Glover*

Movant further claims that trial counsel's cross-examination of Christopher Glover amounted to ineffective assistance of counsel. Glover, who was a fellow inmate of

movant, testified that movant admitted to him that he distributed heroin (criminal docket no. 200 at 127-29). Movant contends that trial counsel was ineffective for failing to ask Glover whether movant had ever mentioned distributing crack cocaine. Courts "generally entrust cross-examination techniques, like other matters of trial strategy, to the professional discretion of counsel." *United States v. Orr*, 636 F.3d 944, 952 (8th Cir. 2011). Movant has not presented evidence indicating how Glover would have responded, let alone that he would have definitively testified that movant never mentioned distributing crack-cocaine. Trial counsel's decision not to elicit unpredictable responses of uncertain relevance and weight from a witness is nothing more than a matter of professional judgment and trial strategy. Indeed, Glover could have provided testimony that would have been detrimental to the defense. Furthermore, even if Glover had testified that movant never mentioned distributing crack-cocaine, it is unclear how this testimony would have changed the outcome of the trial. Thus, this claim fails.

### f. Failure to object to "material matters"

Last, movant baldly asserts that trial counsel failed to "object to material matters in the case" (civil docket no. 1 at 4). He does not identify the particular "material matters" to which trial counsel allegedly failed to object. Moreover, "[t]he ineffective assistance standard is highly deferential to an attorney's judgment, particularly on issues such as whether to object to the introduction of evidence at trial." *United States v. Calhoun*, 721 F.3d 596, 604 (8th Cir. 2013). In addition, movant does not allege how trial counsel's failure to object to any such "material matters" prejudiced him. Accordingly, this claim fails.

### 2. Ineffective Assistance of Appellate Counsel Claims

Movant also asserts that his appellate counsel on direct appeal was ineffective. The Constitution requires that a criminal defendant receive effective legal representation in his first direct appeal. *Evitts*, 469 U.S. at 396; *Boliek v. Bowersox*, 96 F.3d 1070, 1073 (8th

Cir. 1996). In reviewing a claim of ineffective assistance of appellate counsel, a court must apply the familiar test enunciated in *Strickland*. To prevail, movant "must show that his counsel's performance fell below professional standards and that his defense was prejudiced by his counsel's ineffectiveness." *Boliek*, 96 F.3d at 1073 (quoting *Schneider v. Delo*, 85 F.3d 335, 339 (8th Cir. 1996)); *see also Strickland*, 466 U.S. at 688, 694. The Eighth Circuit Court of Appeals applies a "rigorous" standard to each prong of the analysis when the conduct of appellate counsel is at issue:

> The deficient performance standard is rigorous. "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal." *Jones v. Barnes*, 463 U.S. 745, 751, 103 S. Ct. 3308, 77 L. Ed. 2d 987 (1983). Therefore, absent contrary evidence, "we assume that appellate counsel's failure to raise a claim was an exercise of sound appellate strategy." *Roe v. Delo*, 160 F.3d 416, 418 (8th Cir. 1998) (quotation omitted). The prejudice standard is equally rigorous. [The movant] must show that "the result of the proceeding would have been different" had he raised the [specified] issue on direct appeal. *Becht v. United States*, 403 F.3d 541, 546 (8th Cir. 2005), *cert. denied*, 546 U.S. 1177, 126 S. Ct. 1346, 164 L. Ed. 2d 59 (2006).

*United States v. Brown*, 528 F.3d 1030, 1033 (8th Cir. 2008); *accord Johnson v. United States*, 860 F. Supp. 2d 663, 745 (N.D. Iowa 2012).

First, movant alleges that appellate counsel failed "to seek [his] input during the preparation stage of [his] appeal" and "prior to counsel's submission of [movant's] brief as [he] had requested" (civil docket no 1 at 9). Clearly, counsel has "the overarching duty to advocate the [movant's] cause . . . to consult with the [movant] on important decisions . . . [and] to keep the [movant] informed of important developments." *Ryder v. Morris*, 752 F.2d 327, 332 (8th Cir. 1985) (quoting *Strickland*, 466 U.S. at 688). Here, appellate counsel's affidavit indicates that he conferred with movant before he filed the appellate brief: appellate counsel avers that his billing records reflect that he spoke by telephone

with movant on October 11, 2013 and October 28, 2013 "regarding the issues to be raised on appeal (the appeal brief was filed on November 11, 2013)" (civil docket no. 8 at 2-3). In addition, appellate counsel states that movant "wrote letters to [him] of which [he] considered when drafting the appeal brief" (*id.* at 3). In his amended motion, movant states that he "refuses" appellate counsel's claim regarding phone calls he had with movant because appellate counsel "never informed the Court that both phone calls combined for only ten minutes total" (civil docket no. 15 at 1). Thus, movant concedes that appellate counsel contacted him before filing the appellate brief. Moreover, the phone records attached to movant's amended motion support this (*id.* at 5). That the phone calls were short in duration does not in any way establish that appellate counsel's conduct was deficient. In fact, movant fails to identify how his consultations with appellate counsel were deficient or how additional consultation would have produced a different outcome on appeal. Although movant argues that appellate counsel failed to raise several issues on appeal, he does not allege that more consultations would have persuaded appellate counsel to raise those issues. Thus, movant's claim is without merit.

Movant also alleges that appellate counsel rendered ineffective assistance of counsel by failing to raise multiple issues on appeal. After reviewing movant's lengthy brief, the court discerns those issues to include: prosecutorial misconduct based on the government's use of McKenzie-Jackson's plea agreement; alleged constructive amendment of the indictment; sufficiency of the evidence supporting the court's drug quantity findings; the ineffective assistance of trial counsel; the court's imposition of special supervised release conditions; the court's abuse of discretion in denying trial counsel the opportunity to recall government agents; and the application of *Alleyne v. United States*, 133 S. Ct. 2151 (2013), and *O'Neil v. United States*, 549 F. App'x 595 (8th Cir. 2014) (civil docket nos. 1 at 8, 11-13 & 1-1 at 47-58).

Contrary to movant's contention, appellate counsel raised, and the Eighth Circuit Court of Appeals addressed and rejected, some of these arguments on direct appeal, albeit under different legal claims or theories. *See generally Thomas*, 760 F.3d at 882-92. For example, the Eighth Circuit Court of Appeals addressed and rejected movant's contention that he was unconstitutionally convicted for his uncharged crack cocaine distribution conduct and his contention regarding the applicability of *Alleyne* to his case. *See id.* at 888-90. Accordingly, the court will not reconsider these arguments here. *See Bear Stops*, 339 F.3d at 780.

On direct appeal, appellate counsel also "accentuate[d] alleged errors that [trial counsel] made at trial." *Thomas*, 760 F.3d at 887. But the Eighth Circuit Court of Appeals declined to address those claims, noting that "ineffective-assistance claims are best left for collateral proceedings like § 2255 petitions." *Id.* at 887-88. Nonetheless, the Eighth Circuit Court of Appeals addressed movant's allegations concerning inadequacies of trial counsel in the context of the court's denial of movant's request for a new attorney. Furthermore, having found that trial counsel was not ineffective, it follows that appellate counsel would likewise not be ineffective for failing to raise the issue of ineffectiveness of trial counsel on direct appeal. Stated differently, appellate counsel could not have been ineffective in failing to raise a non-meritorious claim that trial counsel was ineffective. Thus, movant's assertion that appellate counsel was deficient for failing to raise claims of ineffective assistance of trial counsel on appeal is without merit.

Additionally, the court rejects movant's claim that appellate counsel was deficient for failing to argue on appeal that *O'Neil* rendered unconstitutional the court's consideration of movant's uncharged crack cocaine activity at sentencing. *O'Neil*, which applied *Alleyne* pursuant to the United States Supreme Court's direct instruction, is inapplicable to this case because the court considered movant's crack cocaine distribution activity only with respect to the advisory United States Sentencing Guidelines' calculations.

27

Appellate counsel has no duty to raise meritless claims, and it is not unreasonable for an attorney to decline to do so. *See Dyer v. United States*, 23 F.3d 1424, 1426 (8th Cir. 1994).

With respect to movant's claim that appellate counsel failed to argue that the government engaged in misconduct by using McKenzie-Jackson's plea agreement, appellate counsel averred that, "[a]s movant notes in his [motion], this claim was ' . . . not developed in the trial record by the Court sufficiently to be raised on appeal'" (civil docket no. 8 at 2). Appellate counsel's decision not to raise a claim that had not been developed in trial proceedings is not unreasonable. Furthermore, as discussed above, movant fails to demonstrate that use of the plea agreement violated the court's in limine order or prejudiced his defense. With respect to movant's claim regarding appellate counsel's failure to argue that trial counsel's inability to recall the government agents was a result of prosecutorial misconduct, appellate counsel explained in his affidavit that his "review of the trial transcript did not reveal a record of prosecutorial misconduct," and, thus, he did not raise the issue on appeal (*id.* at 3). Movant has not presented contrary evidence to overcome the assumption that appellate counsel's failure to raise this claim was an exercise of sound appellate strategy. *See Roe*, 160 F.3d at 418. Moreover, the underlying claim regarding recalling government witnesses has been discussed and rejected above. Similarly, movant's underlying claim regarding constructive amendment of the indictment has been discussed and rejected above. Appellate counsel's decision not to raise these meritless claims is not unreasonable. *See Dyer*, 23 F.3d at 1426.

With respect to the remaining claims that movant alleges appellate counsel failed to raise on appeal, appellate counsel explained in his affidavit that he "researched and drafted a very comprehensive and thorough appeal brief, petition for rehearing en banc, and petition for writ of certiorari to the United States Supreme Court," and that he "raised all issues that had merit" (civil docket no. 8 at 3). Movant fails to provide contrary evidence

to rebut the presumption that appellate counsel's decision to forego raising certain issues on appeal is "sound appellate strategy." *See Roe*, 160 F.3d at 418. Because movant has not established that appellate counsel's strategic selection of appellate claims fell short of the bar of reasonable professional performance, movant's ineffective assistance of appellate counsel claims fail. Even if appellate counsel was deficient in failing to raise other issues on appeal, movant has not shown that he was prejudiced. Movant has failed to present any evidence to establish that there is a reasonable probability that the Eighth Circuit Court of Appeals would have reversed the jury's verdicts or any pretrial, evidentiary or sentencing rulings based on the issues that movant claims should have been raised on appeal.

### 3. *Defaulted Claims*

Movant's claims asserting (1) prosecutorial misconduct, (2) the court failed to apply *O'Neil* to his case and (3) the court abused its discretion in its trial rulings were not raised on direct appeal, and, thus, they are procedurally defaulted. In addition, movant's attempt to relitigate his *Alleyne* claim is procedurally barred. Movant has not demonstrated prejudice or produced any new evidence of his actual innocence to overcome his procedural default. *See Wiley*, 245 F.3d at 752. Hence, the court declines to discuss these defaulted claims.

Moreover, the court thoroughly reviewed the record and finds that the denial of movant's 28 U.S.C. § 2255 motion comports with the Constitution, results in no "miscarriage of justice" and is consistent with the "rudimentary demands of fair procedure." *Hill*, 368 U.S. at 428; *see also Apfel*, 97 F.3d at 1076 ("Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised for the first time on direct appeal and, if uncorrected, would result in a complete miscarriage of justice." (citing *Poor Thunder*, 810 F.2d at 821)). Movant's assertions in support of his request for relief do not lead the court to conclude that a violation of his constitutional right to counsel occurred prior to, during,

or after trial proceedings or on appeal. *See Taylor*, 258 F.3d at 818 ("We operate on the 'strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" (quoting *Strickland*, 466 U.S. at 689)). No constitutional error occurred prior to or during trial, and the jury appropriately found movant guilty in light of the evidence. Given the reasonableness of the strategy pursued in light of the information that trial counsel had obtained, it is clear that no violation of movant's constitutional right to trial counsel occurred. Further, no constitutional error occurred during sentencing or on appeal. Given the reasonableness of the strategy pursued in light of the record developed at the trial court level, it is clear that no violation of movant's constitutional right to appellate counsel occurred. The conduct of trial counsel and appellate counsel fell within a wide range of reasonable professional assistance, *Strickland*, 466 U.S. at 689, and both counsel's performances did not prejudice movant's defense, *id.* at 692-94. Additionally, movant's other arguments are procedurally defaulted and movant has produced no new evidence that he is actually innocent. Nonetheless, it is clear that movant's conviction is based on substantial evidence and his term of 240 months' imprisonment is appropriate.

## V.  CONCLUSION

In sum, the alleged errors that are asserted by movant warrant no relief under 28 U.S.C. § 2255. Movant's claims are without merit and/or procedurally defaulted. Based on the foregoing, movant's 28 U.S.C. § 2255 motion shall be denied.

In a 28 U.S.C. § 2255 proceeding before a district judge, the final order is subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held. *See* 28 U.S.C. § 2253(a). Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. *See* 28 U.S.C. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under 28 U.S.C. § 2253(c) and Fed. R. App. P. 22(b). *See Tiedeman v.*

*Benson*, 122 F. 3d 518, 522 (8th Cir. 1997). Under 28 U.S.C. § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003); *Garrett v. United States*, 211 F.3d 1075, 1076-77 (8th Cir. 2000); *Carter v. Hopkins*, 151 F.3d 872, 873-74 (8th Cir. 1998); *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997); *Tiedman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *Cox*, 133 F.3d at 569 (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)); *see also Miller-El*, 537 U.S. at 335-36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy [28 U.S.C.] § 2253(c) is straightforward: the [movant] must demonstrate that the reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a federal habeas petition is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, the court finds that movant failed to make the requisite "substantial showing" with respect to the claims that he raised in his 28 U.S.C. § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); Fed. R. App. P. 22(b). Because he does not present a question of substance for appellate review, there is no reason to grant a certificate of appealability. Accordingly, a certificate of appealability shall be denied. If he desires further review of his 28 U.S.C. § 2255 motion, movant may

request issuance of the certificate of appealability by a circuit judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520-22.

**IT IS THEREFORE ORDERED**:

1) Movant's amended motion (civil docket no. 15) is **GRANTED**.

2) Movant's 28 U.S.C. § 2255 motion (civil docket no. 1) is **DENIED**.

3) A certificate of appealability is **DENIED**.

**DATED** this 16th day of August, 2017.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA